Case number 12-1956, U.S.A. v. Frederick Cunningham, argument is not to exceed 15 minutes, aside. Mr. Shad, for the affirmative. Hang on one second, let me get seated. Okay, go ahead. Good morning, your honors. May it please the court, I'm here representing Frederick Cunningham, who is the defendant in the court below. I'd like to reserve three of my minutes for rebuttal, if I may. Your honors, there were four issues that were raised in the brief in this case. I'd just like to focus this court's attention on one of those today. And that is the issue of self-representation. I think it's clear from the record here that this defendant desired, on the first day of trial, to represent himself. I think it's also clear that the district court in this case made no McDowell inquiry as to whether or not this particular defendant could represent himself at trial in this case. As a matter of fact, there was really no inquiry whatsoever as to his ability to represent himself. The only inquiry that was made was an inquiry as to the disagreement that he had with counsel. That is necessarily a separate inquiry from the correct inquiry that should have been made. Because the breakdown in communications or the disagreement with counsel would go if he was asking for substitute counsel. He was not asking for that. He was asking to represent himself at this point, and therefore there should have been a McDowell inquiry in this case. We have cited in the brief in this case to the case of Moore v. Haviland. We think that's clearly on point. It's not directly on point, but it's on point with regards to what happened in this case. In the Moore case, it was actually the third day of trial that the defendant was asking to represent himself. Why do you say the standard is on appeal here? It is a de novo standard of review. And I know that that issue has not been resolved by this court. In our brief, we set forth that there is that disagreement. I believe the government makes the argument that it is abuse of discretion. There's not been full briefing, I don't think, on why there is this difference. What I've been able to determine is, again, it comes down to this conflation of a substitution of counsel issue versus the request for a constitutional right. If it's a substitution of counsel issue, if it's preserved, it's abuse of discretion. And that is the correct standard if it's substitution of counsel. In this case, we're talking about the right to self-representation, which Feretta says is clearly a constitutional right. We've, I think, in a lot of cases said that when it's a constitutional claim and it's a preserved constitutional claim, then the standard of review is de novo. I think that this court should take this opportunity to address that issue and make that finding that when we're talking about self-representation, it's a de novo standard of review. Does Robards not address or resolve that issue? It does not resolve that issue. Number one, in Robards, what we're talking about is a review of a state court decision under a post-conviction motion. And Robards was done, actually, prior to a lot of the newer cases that have come out, which clearly limit this court's ability to make any kind of review of the state court's decision. It does not control what the federal standard should be in a federal criminal case. And it doesn't give an analysis of, again, the conflation between a- that the district court should grant that right? No, I think that any time- What are you saying the standard is? Any time a defendant asks to represent him or herself, the court must make a McDowell inquiry at that point. Even if the court is ruling based on untimeliness and unreasonable delay, you're saying they're two completely independent decisions? Absolutely. McDowell controls even if it is untimely and would delay trial? And in this case, the problem is that- Do you have any case that goes that way? Let me go to this issue of this delay, and that comes up in Robards as well. And I think that the problem is that we've kind of taken what happened in Robards and applied it kind of across the board. You know, the issue in Robards was the concern that trial would be delayed by this request. They're in the middle of trial, and so there's this issue of, well, if we grant this request, then we're going to have to delay the trial, and it's going to- you know, we've already got the jury impaneled. That would seem to indicate that if there's a request for self-representation made, then you at least should make a determination of whether or not there would be a delay in trial. Because if there's not going to be a delay in trial, in other words, in this case, if Mr. Cunningham says, I'm ready to go right now, there's no delay, let's keep going. If there's no delay, then there's no issue with regards to this Robards, too late, untimely, prejudice request. The case law says that a defendant has the right to represent himself, and it's not- certainly it's not an unfettered right that we've put qualifications on it, but it requires at least an inquiry before you dismiss it. There can't be a bright line rule the other way, which says once the jury's impaneled, you never get the right to represent yourself, and that's, in fact, what the district court did in this case by making its ruling. It simply said, well, trial's already started, therefore, because trial's already started, it's untimely, and we're not going to move forward with him representing himself. That can't be the standard either. So the problem here is that if we're going to put some sort of temporal restrictions on this matter, that it's got to be tied to, well, would this cause a delay in trial? Would this cause a breakdown in the fundamental procedure of justice? I think the judge did not make adequate, in effect, findings or adequate reasoning. Couldn't have made any adequate findings or reasoning in this case, because it didn't even get into a McDowell inquiry in this case to determine any of the facts which would underlie any sort of reasoning in this case. And it's kind of interesting, because this was actually brought up the first day of trial. And so if you look at joint appendix starting on page 511, there's this in-court, in-camera discussion between defense counsel, the prosecutor, and the court, and the defendant's not in the room at that time. And defense counsel says, hey, there's this problem. My client is unsatisfied with the way I'm handling the defense. And the court says, well, do you want me to make an inquiry of him in open court? And she at that point says, no, because I'm afraid that if you make an inquiry, that he will reject me as counsel and go pro se. And I don't want that. Which is very odd to do all this without the defendant being actively involved in this request to go pro se. So they all make the agreement that they're not going to address it with the defendant on the record, but that she can talk to him after the trial is over on that day. And then once she talks with him, the very first thing the next day is this request to go pro se, because it happened anyway, because he, in fact, wanted to go pro se. I have a question I would like to ask you about the meaning of the statutory section here, 18 U.S.C. 111A, where it says simple assault, not more than a year, and where such acts involve physical contact. There was physical contact here with the victim. My question is, in this case, first, physical contact was an element of the offense, right? That is correct. Now, does that mean that we should say that physical contact was an element of the offense and that the defendant here had an intent for physical contact? Because the brief made much of the argument that intent was a significant question here. And then it got into a discussion of whether intent means general intent, specific intent. But my question is, why does it make a difference in this case about general and specific? Isn't the question one of whether the defendant purposely or wanted to have physical contact? Well, unfortunately, there are two Sixth Circuit published cases that I think kind of control this issue. Yes, but the statute was passed, amended, and this language, physical contact, was inserted after those two cases were decided. That's true. That is true. So those two cases don't decide the question I'm asking you. Yes, and I think, and let me answer that question, but let me just say as an aside that going to my issue of self-representation, that particular issue becomes critical, the issue that you raised, because the defendant wanted to raise a completely different defense than what you've outlined, which is the defense that defense counsel raised. In other words, the entire argument of defense counsel was it was an accident. There was a physical touching, but it was an accident. And therefore, it's not intentional, and therefore, it doesn't qualify under the statute. Who wanted to raise that? That was defense counsel that raised that, that wanted to raise it and did raise that as the sole defense. Now, the defendant in this case, acting by himself, wanted to raise the defense of I never touched him. The car never touched him. They're completely separate defenses, and he wanted to bring in the fact that this particular marshal had changed his story about where he was hit. The defendant, if he'd gotten to represent himself, would never have raised this. Would never have raised it. So how should we treat it then? Forget about the argument that counsel actually made, and you're not making that on appeal? Well, if you find in my favor on the self-representation issue, we do a do-over anyway, and all that becomes irrelevant. All right. So we disagree with that. What do we do then? If we disagree with that, then I think the only way to address that issue is going to have to be on en banc because even though the statute You're waiving that issue. I'm not waiving it at all. I just think that I know that one panel can't overturn another panel on a published case. How can it be controlled by another panel when the statute has been changed, and the element of the offense that is at issue is something that was not in the statute when the case was originally decided? Well, I do recognize that, and that's why I don't want to waive the issue. But on the other hand, the way Gagnon was written along with the Kimes case gives very little wiggle room even with the amendment to the statute. Can I be clear about Gagnon? It was decided after the amendment, but the crime that was involved was before the amendment. So Judge Martin's opinion in Gagnon is cognizant of the amendment. In fact, it absolutely references it, doesn't it? It does. And by saying that non-simple assault is forcible or intentional for another felony. That is correct. In fact, the first time that I read the case, I said, wait a minute, where did this language come from? And then I realized he was referencing the already enacted view language. That is correct. Okay. I don't know. I know I haven't answered your question adequately, but. . . Is there something in the case that makes a ruling on the question of the intent question with regard to physical contact? In other words, if it was just an accident, no intent whatsoever, you're still guilty and you may be sentenced to eight years? As long as he was acting intentionally in other ways. In the course of intentionally impeding, obstructing, et cetera. Exactly. And that's the way that the jury was instructed in this case. Do you think that jury instruction was accurate? It was an accurate statement of the law. Okay. Thank you, Counsel. Thank you. Your time has expired. You'll have your time for rebuttal. May it please the Court. Joel Fossen on behalf of the United States. The United States would request that you uphold the conviction and sentence of the defendant here, Frederick Lawrence Cunningham. Let me begin by addressing the issue of self-representation. I want to clear up what I think is an inaccuracy in my adversary's statement there. The issue of self-representation was not actually addressed and not actually raised explicitly until the beginning of the second day of trial. The in-chambers meeting that took place among myself, among the defense counsel, and with the judge, defense counsel explicitly stated, and it's at page ID number 611, that the defendant was interested in making a scene in front of the jury and standing up and firing her. It doesn't say at that point that he wanted to represent himself. And so what Judge Quist did at that point, because we currently had a witness coming into the witness box, he said, counsel to me, how much more time do you think you need with this witness today? And I said, oh, we're going to be able to finish by 1.30, which was the time that he allotted. And at that point he said, okay, here's what we're going to do. We're going to withhold cross-examination of this witness until tomorrow so you, defense counsel, may go and talk to your client and find out what he wants to do here. And this is all to say, your honors, that at that point in time, Judge Quist handled that situation adequately because whether he was going to be represented by counsel at that point or not, cross-examination wasn't even going to occur tomorrow. So after that first day of trial, and this was a two-day trial, so we've gone through half of the trial. There has been meaningful trial testimony and witnesses. The jury has been empaneled. We are squarely within the midst of trial here. At the beginning of the second day, defense counsel stands up and says he wants to represent himself. So the United States contends it certainly was not an abuse of discretion by Judge Quist at that point to deny self-representation. He clearly did it on untimeliness grounds. And in contrast to Moore v. Haviland, which is what the defendant here relies upon, in that situation, as distinguished from what Judge Quist did, the court in Moore v. Haviland requested the defendant write him a letter essentially saying, are you going to be prepared to do all this, and really wanted that defendant. There's a reason that Moore doesn't apply, because Moore, the judge didn't make the decision, and this judge did. Correct. How does that respond to the argument that this is a constitutional right for which there's de novo review? Well, we would disagree because there is this split, and we are clearly advocating that this issue be decided under Roe, Bards, and Contact, which is the two cases that Judge Quist specifically cited as the basis for denying it. The bottom line here is under Roe, Bards, and Contact, it is a discretionary standard, and the standard under those two cases is abuse of discretion. Well, is your position you'd win even if it were de novo? Even if we took it up for the first time, it was a constitutional claim, did the court not do what he should have done had it been a constitutional claim? He didn't undertake the McDowell inquiry. He did not undertake the McDowell inquiry, but I think there's a difference, Your Honors, respectfully, and this gets to the timeliness issue. If a judge in the midst of trial has to undertake a McDowell inquiry, recognizing that the trial is half over, that we've had two witnesses already in the witness box, there's two more to go, it turns the untimeliness standard completely on its head, and it takes that discretion away. And the government in this case was very concerned that the defendant here was doing this as a dilatory tactic because he had already fired his initial counsel from the Federal Public Defender's Office in the Western District of Michigan, and then doesn't raise a self-representation issue, getting ready for trial, sits through the first day of trial, realizes he does not like how the trial is proceeding, and then says that he wants to represent himself. So I think Judge Quist absolutely did not abuse his discretion in taking all those factors into account and ruling that it was untimely without going into the McDowell inquiry at that point. With respect to what he actually said, help me here, I'm looking at the red brief at page 13. The district court found, and then you quote, it would be very disruptive to this trial to switch from counsel's representation at this point in time. Was that said in open court with the defendant there? It was, yes, Your Honor. Is that pretty much, though, the guts of what he said? Did he have any other surrounding findings? That is correct. Under the rules of evidence? That is primarily, and you raise an important issue there that I want to address. The defendant wanted to represent himself because he was very unhappy that his defense counsel was not submitting into evidence police reports, which are hearsay and inadmissible based on the rules of evidence. And Judge Quist addressed that very issue, which was the only reason in which the defendant wanted to represent himself. Judge Quist said, listen, I know the rules of evidence, and I can tell you those aren't even coming in because they're hearsay. He did let some of them in. He even did. And that it's only permissible for impeachment and is not admissible as substantive evidence, he did allow those reports in. Isn't that second part kind of like part of the McDowell inquiry, not part of the timeliness inquiry? In other words, if you're going to do something stupid, it's still not part of the timeliness inquiry. Implicitly, it absolutely is, Your Honor, because the right to self-representation has to be done knowing, voluntarily, intelligently, and timely. And I think what Judge Quist was imparting here by saying, look, this isn't going to come in by the rules of evidence anyway, but I'll let these excerpts in even though it's all hearsay, was that you clearly don't know what you're doing here, and your counsel does have the best interests here for you in the midst of trial. But on the timeliness side, your adversary said, well, he might have said, but, Your Honor, it won't be disruptive because I'm ready to go right now. But he didn't say that, so the judge had no occasion to perhaps say more that might have been necessary if he had said that. That is correct. And there's an interesting juxtaposition, I think, between this case and Robards v. Rees, where if you look at the colloquy in the Robards case, that defendant was extremely vehement with, and I think it was a Kentucky State court case, where he was very vehement in demanding that he represent himself, again, in the midst of trial, and that was denied. Here, Judge Quist addressed the issue, said, look, that would be in violation of the rules of evidence, addressed the one issue in which he was articulating why he wanted to represent himself, and then the defendant didn't say anything further on the issue after that. So the United States was urged that this is an abuse of discretion standard and that the McDowell inquiry shouldn't be required of a court in these circumstances, squarely in the midst of trial, when they have inquired into the basis for why they want to represent themselves, find that it's in violation of the federal rules, and want to deny it on untimeliness grounds. I take it you agree with Mr. Shadd on this question of physical contact as an element of the offense, that that has already been decided in these other two cases and that we don't have, we're governed, despite the fact that the statute was adopted after those cases, that we are governed somehow or another by those two cases and should or are required to say that intent is no issue at all. That's correct. I do agree, and I believe it's Mr. Shadd's position that it would have to be reviewed en banc for the intent issue to be changed because Kimes, Veach, and I believe Gardner all say 18111 is a general intent crime. But what is the, is there a distinction within the context of general intent, one being this, I intended to get behind the wheel and drive the car. I mean, that is really general intent. Correct. Versus, I intended to get away. I intended to go through the police officers and drive away. Do you see the difference? I mean, must general intent be so general that all you have to say is, well, you decided to drive and that's it, or you decided to reach out, you were obstructing me saying, oh, officer, please don't arrest me, you cannot arrest me now, and you reach out in touching. And are you saying that's the felony? Sure. That's good enough. If he just stumbles and runs into him, stumbles and drops, you know, completely accidentally, you would still say no problem there. I think some of your questions go directly to prosecutorial discretion, and I absolutely appreciate the question, and let me try to answer it this way. The law in the Sixth Circuit is clear that 18111 is a general intent crime, and you can't look at these crimes in a vacuum, which is to say, what is the context in which he did the prohibited act here, okay? The trial testimony and the evidence that came in was absolutely clear that the U.S. Marshals that were trying to apprehend Mr. Cunningham were standing in front of his car about the distance from me to your bench with their guns drawn, pointing them. But the problem with that is that the Marshal who was struck said, I don't think he intended it at all to run into me. It just happened there. You and Mr. Shadd both say that under our law in the Sixth Circuit that that's fine. That is correct because the statute is designed to protect law enforcement officers. They have a right to be in front of that car trying to stop them. But let me be clear that if he just gets in the car and drives away and doesn't know that there are any Marshals around, then he has to have the general intent to impede or interfere with an officer. If you don't know the officers are there, then he doesn't have that intent, right? So you've got to have the intent to impede or interfere. You don't have to have the intent to hit him because we want to protect the officers and you drive in their vicinity at their peril. Is that fair? I absolutely agree with that again. What about the case that I'm remembering from one of the briefs where a judge was accosted to grab her pocketbook. She was robbed. Am I remembering correctly that the analogy was, well, he didn't have to know that she was a judge. He still violated this. That is correct. Although contrast that case from our case. The Marshals were wearing tactical cargo pants. They had their guns drawn. They had their chest badges out. They were six to seven feet away from the car. And in these cases, intent can be inferred through the actions. And the actions were not only were those Marshals standing to do that. What intent can be inferred? The intent to resist arrest, to obstruct, to get away, to do any one of those six or seven prohibited acts. And the other thing I want to point out here is there's this distinction between minor assault, which is just the misdemeanor, and the felony assault, which is physical contact. There's never been a dispute whether it was his left side, his right side, his arm that he got hit. And the defendant didn't have to intend to hit him. Contrast 18111 with 18113, which I think is the intent to commit murder against a federal officer. It specifically writes in the statute that you have to prove, when there's specific intent that's required and needs to be proved, that that intent is written into the statute. And that's recognized, I think, in the Kimes or Veatch case that are cited in the briefs. Counsel, am I right when we talk about the new statute, the only difference has to do with the sentence part, the part about forcibly assaults, resists, opposes, impedes, and intimidates. That was all the same. Is that correct? That's my understanding, yes. And that the old statute then said only simple assault, one year. The new statute says the same thing. The only difference is the old statute says, and in all other cases, up to eight years. The new statute says, instead of all other cases, it says physical contact or intent to commit another felony, eight years. That's correct. So that, if anything, the new statute... And it's physical contact that is an element in this case. Correct. Correct. Because we did not try to prove that he was intending to commit another felony. Mr. Shad has waived that issue before us. That would appear so through the recognition that this would require an embankment review in order to overturn this court's controlling law on the subject. Anything else? Thank you. Counsel? I'd like to speak just for a moment about the self-representation issue because I think we're missing a big concern here. And it came in his argument where he said that it's never been objected to that Deputy F. Demmew had been hit. And that was the whole point. Had this defendant represented himself, that would have been the critical issue. He would have claimed as his defense that, in fact, he had not been hit in this case. That distinguishes... It's not just arguing about whether the evidence would have come in or the rules of evidence or whether he knew the rules of evidence or not. It comes down to you have the right to pursue your own defense if you're representing yourself. It may be a stupid defense. It may not be the one that a counsel would have chosen. But you have the right to choose your own defense and shoot yourself in the foot if you want to. And so the difference here is he wanted to pursue that defense. His counsel wanted to pursue a defense that it was an accident, which actually assumes that the guy got hit. Let me ask you, how are we going to deal with this question of defendants playing with the system, not immediately asking to conduct their own defense, having a lawyer, waiting for the case to start, then in the middle of the case seeking to have the case declared a mistrial, basically, and represent themselves? How are we going to deal with that problem? Because it happens very frequently. And I argue this fairly frequently. But the problem here is that two things. One is you assume there's going to be a mistrial, and that assumption is not valid in this case because there was no claim that the case was going to be set off because of this action. Well, the judge claimed it. The judge said there's going to be an undue delay. Actually, the judge specifically said it would be disruptive. That doesn't mean there's going to be a delay. What it could have very well meant was that the guy, maybe he could have acted out, and that is disruptive. We don't know. And the problem is here, like the judge in this case made a finding that he didn't know the rules of evidence. True or not true, he didn't make a McDowell inquiry to even find out what this particular defendant knew or didn't know about how to act during this trial. The only thing he was going on was this letter that he wrote to the judge the day before. In response to Judge Merritt's question, you would say any time a defendant in mid-trial interrupts the trial and says, I've changed my mind, I want to represent myself, the court is obligated to stop at that point and conduct a McDowell inquiry? Absolutely. I think that should be the bright line rule. Have you got any authority to that effect? No, but the problem is if you do, and I see my time's up if I can finish, if you do that McDowell inquiry, all the questions that we're talking about here will be answered and the judge can make a finding and move on. It creates an appellate review that we can actually have instead of guessing at all these things. So you're saying any time throughout a trial that the defendant decides he wants to represent himself, we're going to stop the case and go through a fact-finding situation? If I can, I'm using more time, but the McDowell inquiry is in the bench book of every United States District Court judge at their fingertips. It would take probably ten minutes or less and the judge could make its findings and, again, we are talking about a constitutional right here, not a particular whether a piece of evidence should come in under Rule 803, but a constitutional right of self-representation. Thank you, counsel. Case will be submitted. Clerk may call the last case.